UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| LOREN AINSWORTH,<br><br>                    Plaintiff,<br><br>          vs.<br><br>RAPID CITY, PIERRE & EASTERN<br>RAILROAD, INC., a Delaware<br>corporation,<br><br>                    Defendant. | CIV. 18-5019-JLV<br><br><br>ORDER |

## INTRODUCTION

Plaintiff Loren Ainsworth filed a two-count complaint against Defendant Rapid City, Pierre & Eastern Railroad, Inc., ("RCPE") for injuries allegedly suffered on May 22, 2015.   (Docket 7).   Mr. Ainsworth seeks recovery in count 1 under the Federal Employers' Liability Act, 45 U.S.C. §§ 51-60 ("FELA"), and in count 2 under the Federal Safety Appliance Act, 49 U.S.C. §§ 20301-20306 ("FSAA").   Id.   Defendant's answer denied plaintiff's claims.   (Docket 13).

Plaintiff filed a motion for partial summary judgment.   (Docket 20). Plaintiff's motion asserts RCPE violated the FSAA "and that its violation caused, in whole or in part," Mr. Ainsworth's injuries "as a matter of law." (Docket 20 at p. 1).   The motion is accompanied by a statement of undisputed facts, an affidavit with five exhibits and a legal memorandum.   (Dockets 21-22, 22-1 through 22-5 and 23).   RCPE's response is accompanied by a response to plaintiff's statement of disputed facts, a statement of disputed facts, an affidavit with six exhibits and a legal memorandum.   (Dockets 27, 27-1 through 27-6, 28 and 31).   RCPE's response asserts there are disputed facts

as to whether a FSAA violation occurred and whether Mr. Ainsworth was injured by the alleged violation.   (Docket 26 at p. 19).   Plaintiff filed a reply brief and a response to defendant's statement of disputed facts.   (Dockets 32-33).

For the reasons stated below, plaintiff's motion for partial summary judgment is granted.

## **SUMMARY JUDGMENT STANDARD**

Under Fed. R. Civ. P. 56(a), a movant is entitled to summary judgment if the movant can "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in the pleadings, but rather must produce affirmative evidence setting forth specific facts showing that a genuine issue of material fact exists.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Fed. R. Civ. P. 56(e) (each party must properly support its own assertions of fact and properly address the opposing party's assertions of fact, as required by Rule 56(c)).   Only disputes over facts that might affect the outcome of the case under the governing substantive law will properly preclude summary judgment.   Anderson, 477 U.S. at 248.   Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."   Id. (emphasis in original).

If a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party,

then summary judgment is not appropriate.  Id.   However, the moving party is entitled to judgment as a matter of law if the nonmoving party fails to "make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).   In such a case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

In determining whether summary judgment should issue, the facts and inferences from those facts must be viewed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).   The key inquiry is "whether the evidence presents a sufficient disagreement to require submission to [the factfinder] or whether it is so one-sided that one party must prevail as a matter of law."  Anderson, 477 U.S. at 251-52.   In order to withstand a motion for summary judgment, the nonmoving party "must substantiate [their] allegations with 'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy.' "  Moody v. St. Charles County, 23 F.3d 1410, 1412 (8th Cir. 1994) (citing Gregory v. Rogers, 974 F.2d 1006, 1010 (8th Cir. 1992)).

In assessing a motion for summary judgment, the court is to "consider only admissible evidence and disregard portions of various affidavits and depositions that were made without personal knowledge, consist of hearsay, or

purport to state legal conclusions as fact." Howard v. Columbia Public School District, 363 F.3d 797, 801 (8th Cir. 2004); see Fed. R. Civ. P. 56(e) (a party may not rely on his own pleadings in resisting a motion for summary judgment; any disputed facts must be supported by affidavit, deposition, or other sworn or certified evidence). The nonmoving party's own conclusions, without supporting evidence, are insufficient to create a genuine issue of material fact. Anderson, 477 U.S. at 256; Thomas v. Corwin, 483 F.3d 516, 527 (8th Cir. 2007); Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir.2011) (*en banc*).

## FACTUAL SUMMARY

The following recitation consists of the material facts developed from the amended complaint (Docket 7), defendant's answer (Docket 13), the parties' statements of undisputed material facts (Dockets 23 & 31), the parties' responses to opposing parties' statements of undisputed material facts (Dockets 28 & 33) and other evidence where indicated. Where a statement of fact is admitted by the opposing party, the court will only reference the initiating document.

Viewing the evidence in the light most favorable to RCPE as the nonmoving party, the following factual summary must be considered.

RCPE employed Mr. Ainsworth as a conductor and, at the time of the occurrence which is the subject of this litigation, all or part of his duties were in furtherance of defendant's business in interstate commerce. (Docket 7 ¶ 3). Mr. Ainsworth began working as a conductor on October 9, 2014. (Docket 23

¶ 1).   The duties of conductors are more physically demanding than the duties of locomotive engineers.   Id. ¶ 2.   Engineers operate the locomotives over the tracks and conductors "are essentially the grunts of the railroad industry" as they are "on the ground walking the trains, letting the engineer know what he needs to know in order to operate safely."   Id.

Mr. Ainsworth reported to the RCPE Rapid City yard at about 10 p.m. on May 21, 2015.   Id. ¶ 3.   As a conductor, Mr. Ainsworth was assigned to work with Jerry Larvie, an engineer.   Id. ¶ 4.   They began their work shift at approximately 10:50 p.m. and were assigned to train S/B LRC DJ-21 and intended to travel south to Chadron, Nebraska.   (Dockets 7 ¶ 4 and 13 ¶ 3). The train consisted of three locomotives and between 30 to 35 freight cars comprising a mix of hoppers and boxcars.   (Docket 7 ¶ 4).

Mr. Ainsworth described what happened at approximately 6:30 a.m. on May 22 near Hot Springs, South Dakota:

> Everything was running pretty smooth.   Just boring.   You know, you're going 10 miles per hour.   But there was nothing that stood out until it had happened.   Me and my engineer, Larive, were just kind of carrying on a conversation to keep each other occupied and awake, and it just kind of suddenly happened, the train went into emergency.[1]   I mean, it (snapped fingers)—it happened pretty quick, to be honest.

Id. ¶ 5) (brackets omitted).   After the train went into emergency, Mr. Ainsworth and Mr. Larvie held a briefing on what could be done.   Id. ¶ 6.   The train came to a stop on a bridge.   Id.   Because there was no walkway on the bridge,

---

[1]"Emergency" is an industry term for rapidly coming to a complete stop. (Docket 23 ¶¶ 5 & 6).

safety rules precluded Mr. Ainsworth from walking on the bridge to safely inspect the train.   Id. ¶ 8; Docket 28 ¶ 6.   Mr. Ainsworth decided to exit the locomotive, walk down to "get a better view" to see what happened and determine whether there was a separation of the train cars' knuckles or couplers.   (Dockets 23 ¶ 7 and 28 ¶ 7).

Mr. Ainsworth got off the locomotive on the conductor's side—the left side facing forward.[2]   (Docket 23 ¶ 9).   Because it was about 6 a.m., Mr. Ainsworth described the lighting conditions as "it was still a little bit dark out[,]" so he used a flashlight to help see where he was going.[3]   Mr. Ainsworth's plan was to go "down a fairly steep incline from the railbed down to the bottom of the gulch, try to cross the creek, climb back up the other side, [and] walk as much

---

[2]Defendant disputes this statement by citing to a section of an exhibit which does not relate to plaintiff's factual statement.   See Docket 28 ¶ 9 (referencing Exhibit B at 20:17-23).   The court reviewed all the submitted testimony and cannot find the source for defendant's statement.   Defendant's response fails to comply with D.S.D. Civ. LR 56.1(B) ("A party opposing a motion for summary judgment must respond to each numbered paragraph in the moving party's statement of material facts with a separately numbered response and appropriate citations to the record.").   Plaintiff's statement is deemed admitted.   D.S.D. Civ. LR 56.1(D) ("All material facts set forth in the movant's statement of material facts will be deemed to be admitted unless controverted by the opposing party's response to the moving party's statement of material facts.").

[3]See footnote 2.

of the train as he could to complete the inspection."[4]   Id. ¶ 8 (ellipse omitted);
see also Docket 22-3 at p. 5:11-17.[5]   Mr. Ainsworth used a flashlight to
illuminate his path after getting off the train.   (Docket 28 ¶ 10).   He walked
down a hillside hoping he could position himself to determine if the railcars
had separated.[6]   (Docket 23 ¶ 10).   Mr. Ainsworth observed a creek bed about
15 feet away, on the other side of it was a vertical rocky surface and "there was
no way [Plaintiff] was even going to try to attempt to even get up that other
side."[7]   Id. (brackets in original).

He described what occurred next:

> Once I realized that there was no safe means of me safely getting to
> the other side is when I was getting ready to turn around and head
> back up to the locomotive, and that's when my foot fell in, like, a
> sinkhole, if you will.   And it fell right in really quick.   Kind of
> startled me.   And then when I pulled myself back so I wouldn't fall
> in more is when I had twisted my knee really bad and I heard it pop.

---

[4]Defendant's response asserts conclusions and legal arguments as to
why Mr. Ainsworth should not have engaged in this conduct.   (Docket 28 ¶ 8).
This response fails to comply with D.S.D. Civ. LR 56.1(B).   Plaintiff's statement
is deemed admitted.   D.S.D. Civ. LR 56.1(D).

[5]The court cites to the page of the transcript in CM/ECF as opposed to
the page of the transcript because both parties submitted different sections of
the transcripts.

[6]Defendant's response fails to identify how the remainder of plaintiff's
statement of fact in paragraph 10 is inaccurate.   See Docket 28 ¶ 10; see also
footnote 2.

[7]See footnote 6.

And that's when I knew instantly something was not right with my knee and I barely had made it back up to the locomotive.[8]

Id. ¶ 11 (brackets omitted).   Mr. Larive heard Mr. Ainsworth "yell over the radio that he fell in the creek and had hurt his knee."   Id. ¶ 13 (brackets and ellipse omitted).   Mr. Larvie met Mr. Ainsworth at "the front of the locomotive and gave him a hand up onto the locomotive and got him into the cab . . . he couldn't hardly walk."   Id.

Mr. Larvie radioed the dispatcher to report Mr. Ainsworth's injury.   Id. ¶ 14.   They completed a second briefing to determine what to do next.   Id. They decided Mr. Ainsworth would sit in the engineer's seat and monitor the brake system to make sure the brakes stayed applied, while Mr. Larvie went toward the back of the train to determine the cause of the emergency stop.   Id. ¶ 15.   Mr. Larive went to the rear of the third locomotive, climbed to the top of the first car and walked on top of the cars.[9]   Id.   Mr. Larvie testified he believed this was the safest approach since there was no walkway on the bridge.[10]   Id.

---

[8]Defendant's response acknowledges Mr. Ainsworth injured his knee but asserts conclusions and legal arguments as to why Mr. Ainsworth should not have engaged in this conduct.   (Docket 28 ¶ 11).   This response fails to comply with D.S.D. Civ. LR 56.1(B).   Plaintiff's statement is deemed admitted. D.S.D. Civ. LR 56.1(D).

[9]Defendant's response asserts conclusions and legal arguments as to why Mr. Larvie should not have engaged in this conduct.   (Docket 28 ¶ 15). This response fails to comply with D.S.D. Civ. LR 56.1(B).   Plaintiff's statement is deemed admitted.   D.S.D. Civ. LR 56.1(D).

[10]See footnote 9.

Mr. Larive walked the tops of about 18 cars before he got on the ground so he could inspect the train.[11]  Id. ¶ 16.  The track on which the 18 cars stood provided "no surface to walk on next to the rail.  It's pretty much just downhill."[12]  Id.  Mr. Larvie described the process he went through to discover the problem, a separated air hose:

> Once [I] got on the ground, I walked back to the rear, all the way to the rear of the train, because there was [sic] still cars beyond that had to be look for the broken hose. . . . Then I came back, walked as far as I could on the ground again to find the broken line, and then I still didn't see it.  I had to climb back up on top of the cars and start across again and was looking down with my lantern and happened to notice that a line had broke [sic] between a boxcar and a covered hopper that were both actually sit[t]ing on the bridge.  So I have to climb down between them and then find a way to get myself off the drawbars onto the ground.  Hang on and get myself in between them to where I could put the line back together.  So it was an unsafe situation for everyone.[13]

Id. ¶ 17 (brackets and ellipses omitted).  RCPE's general manager, Todd Bjornstad, was called to the scene during the early morning hours of May 22.

---

[11]Defendant's response asserts conclusions and legal arguments as to why Mr. Larvie should not have engaged in this conduct.  (Docket 28 ¶ 16).  This response fails to comply with D.S.D. Civ. LR 56.1(B).  Plaintiff's statement is deemed admitted.  D.S.D. Civ. LR 56.1(D).

[12]See footnote 11.

[13]Defendant's response asserts conclusions and legal arguments as to why Mr. Larvie should not have engaged in this conduct.  (Docket 28 ¶ 17).  This response fails to comply with D.S.D. Civ. LR 56.1(B).  Plaintiff's statement is deemed admitted.  D.S.D. Civ. LR 56.1(D).

Id. ¶ 18.   Mr. Bjornstad arranged for Mr. Ainsworth's transportation to the

hospital.[14]   (Docket 28 ¶ 18).

Mr. Bjornstad and RCPE Roadmaster Bill Held investigated the

circumstances of the incident.   Id. ¶ 19.   An e-mail issued by Mr. Bjornstad

on May 22, 2015, summarized the incident:

> At approximately 0630 today, Rapid City Conductor Loren
> Ainsworth (10 months experience, 27 years old) sustained a
> reportable personal injury when attempting to cross a creek to
> inspect his train.   S/B LRDJ-21 (3 engines, 35 cars) went into
> emergency (air hose separation) at about 0600 on the Black Hills
> Sub near MP 45.7 (approximately half way between Rapid City and
> Dakota Jct).   To facilitate full train inspection, Mr. Ainsworth had
> to go into a cut that was 50 ft lower than the [mainline].   During
> Mr. Ainsworth's attempt to cross the 6 ft wide creek, he stepped into
> mud near the creek and started to sink.   He pulled his left foot out
> of the mud and then twisted before[15] his right foot was clear of the
> mud causing injury to his right knee. I inspected the area of the
> incident and found this area to be very hazardous to walk during
> daylight hours.   Mr. Ainsworth tried to cross when it was dark.
>
> Mr. Ainsworth was taken to Rapid City Regional Hospital and given
> a prescription (Percocet), knee brace, crutches and time-off until an
> MRI can be scheduled.   Initial feedback from the Dr. indicates a
> possible torn meniscus that will require surgery.[16]

(Docket 23 ¶ 20).   Mr. Bjornstad explained the purpose of the e-mail:

> Any time there's a safety incident the railroad is responsible to send
> notification to the regional leadership team.   This e-mail was sent

---

[14]Following a course of physical therapy and bracing of his knee, Mr.
Ainsworth had a surgical posterior cruciate ligament reconstruction and
treatment of the meniscus.   (Docket 23 ¶ 22).

[15]Plaintiff's statement of facts included a typograph error.   Compare
Dockets 22-5 and 23 ¶ 20.

[16]Defendant does not dispute the content of the e-mail but contests the
interpretation of the document.   (Docket 28 ¶ 2).

> to Kurt Erickson, who at the time was the safety manager for the Mountain West Region. Also copied are the SBP or the region at the time, and the VPT [at] the time, as well, for the region. And my leadership team on the—Rapid City.

(Docket 23 ¶ 21). After completion of the investigation, Mr. Bjornstad concluded Mr. Ainsworth should have called the manager on duty for assistance with inspection of the train. (Docket 28 ¶ 19).

With 10 years of railroad experience, Mr. Larvie opined the air hose separated because of a "run-in." (Dockets 31 ¶ 3 and 33 ¶ 3). He described a "run-in" as follows:

> The box cars, as they came down around the hill, rolled into the rest of the train, which was slowing to maintain speed. The cars that were behind the boxcars put weight behind them, pushing them, which forced the drawbars to come together, which is called a run-in, and, well, sometimes it does it, it will just pop the hoses loose.

(Dockets 31 ¶ 3; 33-3 and 27-3 at pp. 2:25-3:6).

With 23 years of railroad experience, Mr. Bjornstad opined he did not find an issue with either the track or the hoses mechanically.[17] (Docket 31 ¶ 4). Neither he nor Roadmaster Held could identify anything which specifically caused the hose separation.[18] Id.

---

[17]Defendant's proposed disputed facts contain a number of opinions of Mr. Bjornstad which do not relate to plaintiff's motion for partial summary judgment. See Docket 31 ¶¶ 5-10. 45 U.S.C. §§ 53 & 54; 49 U.S.C. § 20304.

[18]Defendant proposed an opinion of its expert witness, Blake Jones, an Assistant Vice President of Operations for Genessee & Wyoming Railroad. (Docket 31 ¶ 2). Mr. Jones acknowledged his opinion is rank speculation. (Docket 33 ¶ 2). This opinion will not be considered. See Moody, 23 F.3d at 1412 (In order to withstand a motion for summary judgment, the nonmoving party "must substantiate [its] allegations with sufficient probative evidence [that] would permit a finding in [its] favor on more than mere speculation, conjecture, or fantasy." (internal quotation marks and citation omitted).

## ANALYSIS

The FSAA directs that a railroad carrier may use

> a train only if . . . enough of the vehicles in the train are equipped
> with power or train brakes so that the engineer on the locomotive
> hauling the train can control the train's speed without the necessity
> of brake operators using the common hand brakes for that purpose;
> and . . . at least 50 percent of the vehicles in the train are equipped
> with power or train brakes and the engineer is using the power or
> train brakes on those vehicles and on all other vehicles equipped
> with them that are associated with those vehicles in the train.

49 U.S.C. § 20302(5)(A) & (B). " '[V]ehicle' means a car, locomotive, tender, or

similar vehicle." 49 U.S.C. § 20301(a). "The FSAA impose absolute duties on

railroads to provide required safety equipment on their trains . . . including

safe power braking systems[.]" <u>Grogg v. Missouri Pacific Railroad Co.</u>, 841

F.2d 210, 212 (8th Cir. 1988) (citing 45 U.S.C. §§ 1, 3 & 9).[19]

"The FSAA do not by [its] terms confer a right of action on injured

parties." <u>Id.</u> (referencing <u>Urie v. Thompson</u>, 337 U.S. 163, 188 (1949)).

"Rather, if [plaintiff employee] proves a violation of the FSAA, [he] may recover

under the FELA without further proof of negligence by [the railroad carrier]."

<u>Id.</u> (referencing <u>Urie</u>, 337 U.S. at 189). "In short, the FSAA provide the basis

for the claim, and the FELA provides the remedy." <u>Id.</u> (citing <u>Beissel v.</u>

---

[19]"Although the 1994 Federal Railroad Safety Authorization Act recodified
the FSAA, the Railroad Safety Authorization Act's legislative history clearly
demonstrates that the substantive provisions of the FSAA remain unchanged.
. . . Thus, pre–1994 caselaw interpreting the FSAA applies with equal force to
the current codification." <u>Phillips v. CSX Transportation, Inc.</u>, 190 F.3d 285,
288 n.1 (4th Cir. 1999). <u>See</u> 49 U.S.C. §§ 20301-06.

<u>Pittsburgh & Lake Erie R.R.</u>, 801 F.2d 143, 145 (3d Cir. 1986) (brackets omitted).

To prove the train brakes[20] on RCPE's train violated the FSAA, Mr. Ainsworth must "show either evidence of 'some particular defect, or the same inefficiency may be established by showing a failure to function, when operated with due care, in the normal, natural, and usual manner.'" <u>Id.</u> (citing <u>Myers v. Reading Co.</u>, 331 U.S. 477, 483 (1947)). "Proof of an actual break or visible defect . . . is not a prerequisite to a finding that the statute has been violated. Where a jury finds that there is a violation, it will be sustained, if there is proof that the mechanism failed to work efficiently and properly . . . . The test in fact is the performance of the appliance." <u>Id.</u> (citing <u>Myers</u>, 331 U.S. at 483).

To recover for a FSAA violation Mr. Ainsworth must prove: "(1) the statute was violated; and (2) the violation was 'a causative factor contributing in whole or in part to the accident' that caused [his] injuries." <u>Id.</u> (citing <u>Beimert v. Burlington Northern, Inc.</u>, 726 F.2d 412, 414-15 (8th Cir. 1984). He is not required to prove RCPE "was negligent . . . or that a specific air brake hose was defective[.]" <u>Id.</u> (referencing <u>Coleman v. Burlington Northern, Inc.</u>, 681 F.2d 542, 544 (8th Cir. 1982)). Mr. Ainsworth is "required to prove only

---

[20]In <u>New York, New Haven & Hartford R. Co. v. Leary</u>, 204 F.2d 461 (1st Cir. 1953), the court held that the power brake provision in 45 U.S.C. §§ 1, 9, referred to air brakes. In <u>United States v. Erie Railroad Company</u>, 237 U.S. 402 (1915) and <u>United States v. Chicago, Burlington and Quincy Railroad Co.</u>, 237 U.S. 410 (1915), the Supreme Court used the terms "power brakes" and "air brakes" as synonymous.

13

the statutory violation and thus is relieved of the burden of proving negligence."
Crane v. Cedar Rapids & Iowa City Railway Co., 395 U.S. 164, 166 (1969).

The Supreme Court concluded "Congress vested the power of decision in these actions exclusively in the jury in all but the infrequent cases *where fair-minded jurors cannot honestly differ*[.]"   Rogers v. Missouri Pacific Railroad Co., 352 U.S. 500, 510 (1957) (emphasis added).   In this case, there is no disagreement that the air hose separated, placing the train into emergency. There is no evidence which would allow a jury to consider "a choice of other probabilities."   Id. at 507.   The only reason the train stopped on May 22, 2015, is because the air hose separated.

Mr. Larvie testified that during his inspection of the train he observed an air hose line separation between a boxcar and a covered hopper car.   (Docket 23 ¶ 17).   "[T]his hose was designed under normal operating conditions to remain attached in order to maintain sufficient air pressure for the train to be slowed or stopped on command."   Grogg, 841 F.2d at 213.   "[A]n air hose that cannot safely negotiate tracks encountered during routine train operation could demonstrate a failure to perform up to FSAA standards, and 'a failure of equipment to perform as required by the FSAA is in itself an actionable wrong." Id. (citing O'Donnell v. Elgin, Joliet E. Ry. Co., 338 U.S. 384, 390 (1949) (brackets omitted).   The undisputed facts show the train braked unexpectedly when the air hose failed to remain in place causing the air braking system to suddenly lose pressure and make an emergency stop or go "into emergency" in railroad language.   See Docket 23 ¶ 20.

14

RCPE does not dispute the train braking system, including its air hose components, is an appliance covered by the FSAA. <u>See</u> Dockets 23 ¶ 20 (the train "went into emergency (air hose separation)[.]") and 31 ¶ 4 (Mr. Bjornstad does not deny the air hose is covered by the FSAA but rather "opined that the separation of the air hoses in this case would not be a violation of the FSAA.").[21]

Given these facts, the air hose failed to function "in the normal, natural, and usual manner." <u>Myers</u>, 331 U.S. at 483. <u>See</u> <u>also</u> <u>Richards v. Consolidated Rail Corporation</u>, 330 F.3d 428, 432 (9th Cir. 2003) ("The FSAA imposes an absolute duty on railroads to provide and maintain certain safety appliances, including power braking systems.") (referencing <u>Myers</u>, 331 U.S. at 485; <u>O'Donnell v. Elgin, J. & E. Ry. Co.</u>, 338 U.S. 384, 390 (1949) ("[A] failure of equipment to perform as required by the [FSAA] is in itself an actionable wrong, in no way dependent upon negligence and for the proximate results of which there is liability—a liability that cannot be escaped by proof of care or diligence."). The "railroad's violation of [the FSAA] . . . is negligence *per se*." <u>CSX Transportation, Inc., v. McBride</u>, 564 U.S. 685, 703 n.12 (2011) (referencing <u>Kernan v. American Dredging Co.</u>, 355 U.S. 426, 438 (1958)).

<u>ASSUMPTION OF THE RISK</u>

RCPE asserts "[t]his Circuit's jurisprudence established long ago that an employee's failure to obey an applicable standing rule or specific order

---

[21]The court may disregard testimony which "purport[s] to state legal conclusions as facts" <u>Howard</u>, 363 F.3d at 801.

promulgated for his safety is as a matter of law a bar to his recovery under

FELA." (Docket 26 at p. 15) (referencing <u>Chicago, Saint Paul, Minneapolis &</u>

<u>Omaha Railroad Co. v. Arnold</u>, 160 F.2d 1002, 1006-07 (8th Cir. 1947). This

is equivalent to an assumption of the risk defense.

In <u>Ackley v. Chicago and Northwestern Transportation Co.</u>, 820 F.2d 263

(8th Cir. 1987), the court examined the propriety of giving jury instruction XVI:

"[t]he Defendant has a right to assume that its employees will exercise

reasonable care for their own safety and that they will not disobey safety rules

and practices." <u>Id.</u> at 266. The court concluded that assumption of the risk

instruction was improper.

> Approving a charge like Instruction XVI would return us to a time
> when an employee's safety rule violation barred all recovery in a
> FELA action. . . . Were this the standard, an employee suing under
> the FELA would be barred automatically from recovery merely
> because the railroad put on evidence of a safety rule violation.
> Conversely, an employee's evidence of the railroad's failure to
> promulgate or enforce safety rules would create a jury question but
> would not ensure recovery. Such an imbalanced analytical scheme
> is inconsistent with Congress' objectives in enacting the FELA.

<u>Id.</u> at 268 (referencing <u>Chicago, St. P., M. & O. R.R.</u>, 160 F.2d at 1002, 1006–

07 (8th Cir. 1947)); <u>Henwood v. Coburn</u>, 165 F.2d 418, 423 (8th Cir. 1948) (per

se rule denying recovery because of employee's safety rule violations is

inappropriate in FELA action). <u>See</u> <u>also</u> 49 U.S.C. § 20304 ("An employee of a

railroad carrier injured by a vehicle or train used in violation of section

20302(a)(1)(A), (2), (4), or (5)(A) . . . does not assume the risk of injury resulting

from the violation[.]").

Defendant's argument is without merit.

INDEPENDENT CAUSE

RCPE argues Mr. Ainsworth's own negligence was the sole cause of his injury. (Docket 26 at p. 16). Defendant contends "[d]etermination of a sole cause defense is a matter of fact for the jury to decide." Id. (referencing Walden v. Illinois Central Gulf Railroad, 975 F.2d 361, 364-65 (7th Cir. 1992)). RCPE submits "[t]he issue can only be taken from the jury if there is 'zero probability' that action or inaction by the railroad contributed to the employee's injury." Id. (referencing Eckert v. Aliquippa & Southern Rail Road, Co., 828 F.2d 183, 187 (3d Cir. 1987); Pehowic v. Erie Lackawanna Rail Road, Co., 430 F.2d 697, 699 (3d Cir. 1970); Rogers, 352 U.S. at 510).

"Defective brakes create a number of hazards, depending on the circumstances under which they operate. The danger is not confined merely to the likelihood that a sudden stop or a failure to stop might produce a collision or a severe jolt." New York, N.H. & H.R. Co., 204 F.2d at 466. "[T]he danger also consists in the fact that a sudden stop in the night expose[s] the employees to other hazards. Among these hazards are bad weather, faulty road beds, and an unperceived trestle." Id. It is the duty of the crew, particularly the conductor, to see that his train, "and particularly its air-brake-hose and apparatus, [are] repaired and placed in such condition as to continue the trip as soon as possible." Id.

There is no evidence Mr. Ainsworth engaged in a private frolic or any other conduct unrelated to his duties as a conductor. Simply because the defendant may identify a different course of action or route for inspecting the

train and its then unresolved air hose separation does not make plaintiff's action a sole, separate cause of the injuries he sustained. See Nicholson v. Erie R.R. Co., 253 F.2d 939, 940-41 (2d Cir. 1958) (finding no triable causation issue where female employee working in railroad's shop, faced with railroad's negligent failure to provide a female restroom within the shop, was injured by passenger's suitcase while she looked for female restroom on stationary train); Richards, 330 F.3d at 437 n.5 (Even if the employee was standing next to the train and "waiting for the brakes to be repaired, is attacked by a rabid dog[]" or while waiting for the brake to be repaired is injured when he "decides to stretch his . . . legs, goes for a walk, and falls . . . . A court reasonably could find no causation as a matter of law in these situations.").

Defendant's independent cause defense fails because the court cannot find there is a "zero probability" that the railroad's conduct contributed to the employee's injury." Eckert, 828 F.2d at 187.

CONTRIBUTORY NEGLIGENCE

Plaintiff moves to strike defendant's contributory negligence defense. (Dockets 20 and 21 at pp. 2 & 13). He asserts a contributory negligence defense is not available in a FSAA claim. (Docket 21 at pp. 2 & 13). Mr. Ainsworth argues under 45 U.S.C. § 53 the defendant "is deprived of the defense of contributory negligence[.]" Id. at p. 13 (citing St. George v. BNSF Railway Co., 60 F. Supp. 3d 1016, 1029 (D. Minn. 2014) (quoting Crane, 395 U.S. at 166; brackets omitted).

18

RCPE acknowledges "contributory negligence is no defense where a plaintiff proves that his injury resulted in whole or in part from an FSAA violation." (Docket 26 at p. 18). Despite this acknowledgement, the defendant contends "an employee's failure to obey safety rules may be considered by the jury in assessing contributory negligence." Id. (citing Ackley, 820 F.2d at 268).

In relevant part, Section 53 provides:

> [T]he fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee: *Provided*, That no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee.

45 U.S.C. § 53. Under the FSAA, "the railroad is deprived of the defense[] of contributory negligence[.]" Crane, 395 U.S. at 166.

Defendant's citation to Ackley is taken out of context. Ackley was specifically addressing the permissive consideration of contributory negligence in determining damages in a FELA action. In a FELA claim, "[a]ny contributory negligence would mitigate, not eliminate, [plaintiff's] damages." Ackley, 820 F.2d at 265.

Defendant's assertion of plaintiff's alleged contributory negligence has no place in determining whether Mr. Ainsworth was injured because of the railroad's violation of a FSAA provision. As a matter of law, RCPE is prohibited from asserting a contributory negligence defense to plaintiff's FSAA claim.

Plaintiff's motion to strike the contributory negligence defense as it relates to the FSAA claim is granted.

During the jury trial on plaintiff's FELA damages, the jury may be instructed that Mr. Ainsworth's negligence, if any, must be considered in comparison to the railroad's negligence as a matter of law for violating the FSAA.[22]  "Diminution requires comparing proof of the employer's and employee's negligence."  <u>Burlington Northern, Inc. v. Hughes Brothers, Inc.</u>, 671 F.2d 279, 283 (8th Cir. 1982).

In this case, there is no genuine issue of material fact and Mr. Ainsworth is entitled to judgment as a matter of law as to causation because "the defective appliance played *any* part, even the slightest, in bringing about the plaintiff's injury."  <u>Richards</u>, 330 F.3d at 437 (emphasis in original).  <u>See</u> <u>also</u> <u>CSX Transportation, Inc.</u>, 564 U.S. at 704 (causation is established if the "defendant railroad caused or contributed to a [railroad worker's injury] if the railroad's negligence played a part—no matter how small—in bringing about the injury.").

## ORDER

Based on the above analysis, it is

ORDERED that plaintiff's motion for partial summary judgment (Docket 20) is granted.

IT IS FURTHER ORDERED that the court finds as a matter of law defendant's violation of the Federal Safety Appliance Act, 49 U.S.C.

---

[22]The court is not making a final determination that a jury instruction on contributory negligence will be given at trial.

§§ 20301-20306, caused in whole or in part plaintiff's injuries of May 22, 2015.

IT IS FURTHER ORDERED that a scheduling order setting a date for the jury trial on the issue of damages shall issue.

Dated March 20, 2020.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE